DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**HALLANDALE PLAZA, LLC,**
Appellant,

v.

**NEW TROPICAL CAR WASH, LLC,**
Appellee.

No. 4D21-1445

[March 9, 2022]

Appeal from the County Court for the Seventeenth Judicial Circuit, Broward County; Tabitha Elise Blackmon, Judge; L.T. Case No. COSO-20-8565.

Kevin H. Fabrikant and Corey J. Biazzo of Fabrikant & Associates, PLLC, Hollywood, for appellant.

Holiday Hunt Russell of Holiday Hunt Russell PLLC, Fort Lauderdale, for appellee.

CONNER, C.J.

Hallandale Plaza, LLC ("the Landlord") appeals the order dismissing its eviction action against New Tropical Car Wash LLC ("the Tenant"). The Landlord contends the trial court erred in: (1) denying due process by *sua sponte* dismissing the eviction action on the Tenant's preliminary motion to determine rent; (2) finding the Tenant paid additional rent under duress; (3) failing to consider that the Tenant's payment of additional rent for a period constituted a waiver of an alleged oral amendment to the written lease removing the obligation of additional rent; and (4) misinterpreting the written lease agreement. We reverse as to the first, second, and fourth issues and remand for further proceedings, addressing the third issue to the extent it is relevant on remand.

*Background*

The Landlord acquired the rental property from a former owner, subject to an existing written commercial lease between the prior owner and the Tenant ("the Lease"). Subsequently, the Landlord filed a one-count

complaint for eviction against the Tenant, alleging that the Tenant failed to pay the full amount of rent due under the Lease and the Landlord had been assigned the rights under the Lease as the landlord.

In its answer, the Tenant denied the allegation that it failed to pay rent and asserted that it was current with its rental obligations. On the same day the Tenant filed its answer, the Tenant also filed its motion to determine rent pursuant to chapter 83, Florida Statutes. The motion sought determination of the rent to be paid during the pendency of the eviction action. The motion further asserted that not only was there no rent due, but instead the Landlord owed the Tenant thousands of dollars in "improper forced payments" of real estate taxes and operating expenses.

The Lease was admitted into evidence at the hearing on the motion to determine rent. The Lease required the Tenant to pay "base rent" and "additional rent." The base rent was a consistent monthly amount. The additional rent was a proportionate share of "annual operating expenses" and "annual taxes" incurred by the Landlord for the property. The Lease provided that the Tenant's proportionate share of additional rent would be estimated before each lease year began, divided into twelve payments, and payable monthly with the base rent. Each year, if the estimated amount of additional rent proved to be inaccurate, the additional rent would be adjusted accordingly.

The evidence reflected that the Tenant's base rent was in the court registry and was current. However, the parties disagreed as to any additional rent due. The Tenant's representative testified to an oral agreement with the original landlord, amending the Lease to remove the Tenant's obligation of additional rent. Evidence was presented that: (1) prior to purchasing the property from the original landlord, the Landlord expressed concern as to whether an amendment to the Lease terms had been made such that would prevent it from enforcing the terms of the Lease; (2) the Landlord was advised in writing that an oral agreement had been made between the Tenant and original landlord that the Tenant would not have to make those payments; and (3) because of the oral modification agreement, the Tenant never paid operating expenses or real estate taxes to the original landlord, and that for more than a year after the Landlord purchased the subject property, the Landlord had not charged him the additional rent.

The Tenant's representative testified that subsequently, the Landlord's director began harassing him to pay the real estate taxes and operating expenses, explaining that the Landlord sent him a notice stating it would take possession of the premises if the Tenant did not make the payments.

2

The Tenant's representative testified he did not have a choice, did not feel comfortable, and was under a lot of pressure when he ultimately paid that additional rent. Evidence was presented that the Tenant had a pending small claims action to recoup the payments made for real estate taxes and operating expenses due to the Landlord's harassment.

The Landlord presented evidence that while the original landlord indicated it had orally agreed with the Tenant that the Tenant would not have to pay additional rent, the Landlord nevertheless proceeded on the Lease terms because the Lease clearly required a written addendum to document a modification of the Lease and there was no written addendum.

The Tenant argued to the trial court that the issue before it was the Tenant's responsibility for payment of operating expenses and that the Lease was ambiguous. The Tenant maintained that while one portion of the Lease generally referred to operating expenses as additional rent, a specific definition of "operating expenses" in the Lease reflected that such did not include real estate taxes. The Tenant argued that this conflict made the Lease terms ambiguous and that the Lease should be construed against the Landlord. The Tenant also argued that the Landlord stepped into the shoes of the original landlord who had modified the Lease and not charged for the additional rent, waiving any obligation on the part of the Tenant to pay such expenses, and that this was expressed to the Landlord prior to its purchase of the property.

The Landlord argued that the Lease was not ambiguous, that additional rent was defined as operating expenses *and* taxes, and that taxes not being defined within "operating expenses" made sense. The Landlord maintained that the oral agreement between the original landlord and the Tenant was not sufficient to constitute modification of the Lease, and that the Tenant waived any right to claim it was not obliged to pay the taxes and operating expenses when it made such payments in the past to the Landlord.

The trial court entered its order on the Tenant's motion, wherein it acknowledged that both parties agreed that the Tenant was current as to the payment of base rent but disagreed as to whether "additional rent" was outstanding. The trial court concluded that the Lease was ambiguous as to what "additional rent" consisted of, noting that while the Lease's paragraph 3(c) provides for the payment of operating expenses, paragraph 3(d) defines "operating expenses" as not including "real property taxes." The trial court reasoned that, at a minimum, the issue of whether "'additional rent' *i.e.* operating expenses," encompassed real estate taxes

was ambiguous and should be construed against the drafter as well as the Landlord as the successor landlord.

The trial court found that the Tenant was not required to pay additional rent due to the oral agreement reached by the Tenant and the original landlord, which the trial court determined amended the Lease. The trial court found that the original landlord took no action to collect these amounts and that the Landlord purchased the property with knowledge of same, and that in fact, the Landlord did not raise the issue to the Tenant until more than a year after the Landlord purchased the property. The trial court rejected the Landlord's claim that the oral agreement amending the Lease was invalid under the Lease requirement that changes be in writing and signed by both parties. The trial court instead relied on case law holding that oral modification may be permissible despite a provision requiring changes to be in writing where the oral agreement is accepted and acted upon "in such [a] manner as would work a fraud on either party to refuse to enforce." *King Partitions & Drywall, Inc. v. Donner Enters., Inc.*, 464 So. 2d 715, 716 (Fla. 4th DCA 1985) (quoting *Prof'l Ins. Corp. v. Cahill*, 90 So. 2d 916, 918 (Fla. 1956)). The trial court concluded that such was the case here, where even the Landlord recognized prior to its purchase of the property that the Tenant and original landlord had amended the Lease so that the Tenant would not be responsible for payment of "additional rent."

The trial court also concluded that the Landlord harassed the Tenant about the payment of additional rent and that the Tenant, under duress, began paying additional rent.

Based on the foregoing, the trial court ruled that the Tenant was current with its monthly rental obligations and was not required to pay "additional rent." In addition, the trial court dismissed the case and transferred it to the judge handling the Tenant's small claim suit to address any subsequent motions collateral to the dismissal. The Landlord's motion for rehearing was denied and the Landlord gave notice of appeal.

*Appellate Analysis*

Due Process

The Landlord argues on appeal that it was denied due process when the trial court *sua sponte* dismissed the eviction action upon ruling on the Tenant's motion to determine rent. More specifically, the Landlord argues it was deprived of notice and opportunity to be heard on the issue of

dismissal of the action. The Landlord maintains the purpose of the motion authorized by statute is to provide a preliminary hearing to determine the amount of rent to be deposited into the court registry during the pendency of the eviction action. The Landlord points out that the Tenant did not move or ask for dismissal and argues that "[a] trial court cannot dismiss a cause of action without a pending motion or objection," and thus "[i]t is a due process violation for a trial court to sua sponte dismiss a claim without notice or a hearing," citing *Bank of N.Y. Mellon Corp. v. Hernandez*, 299 So. 3d 461, 463 (Fla. 3d DCA 2020). The Landlord also argues that the motion to determine rent was not intended to serve as a vehicle for final adjudication of eviction actions.

Section 83.232, Florida Statutes (2020), concerns "Rent paid into registry of court," and provides:

> (1) In an action by the landlord which includes a claim for possession of real property, the tenant shall pay into the court registry the amount alleged in the complaint as unpaid, *or if such amount is contested, such amount as is determined by the court*, and any rent accruing during the pendency of the action, when due, unless the tenant has interposed the defense of payment or satisfaction of the rent in the amount the complaint alleges as unpaid.
>
> . . . .
>
> (2) *If the tenant contests the amount of money to be placed into the court registry, any hearing regarding such dispute shall be <u>limited to only the factual or legal issues concerning</u>*:
>
> (a) Whether the tenant has been properly credited by the landlord with any and all rental payments made; and
>
> (b) *What properly constitutes rent under the provisions of the lease.*

§ 83.232(1)-(2), Fla. Stat. (2020) (emphasis added). The statute also provides that a tenant's failure to pay rent due into the court registry as ordered operates as a waiver of a tenant's defenses and entitles the landlord to immediate default for possession. § 83.232(5), Fla. Stat. (2020). The purpose of section 83.232 is "to protect a commercial landlord from irreparable harm where a tenant holds over during eviction proceedings without paying rent." *Lenmar Realty, LLC v. Sun Elec. Works,*

*Inc.*, 317 So. 3d 125, 129 (Fla. 4th DCA 2021) (quoting *Famsun Invest, LLC v. Therault*, 95 So. 3d 961, 963 (Fla. 4th DCA 2012)).

At the hearing on the motion, the parties agreed the Tenant was current on base rent payments, which the record reflects were being paid into the court registry. The dispute was how much additional rent was due, if any. Pursuant to section 83.232(2)(b), the trial court was to conduct an evidentiary hearing limited to the factual and legal issues concerning "[w]hat properly constitutes rent under the provisions of the lease." § 83.232(2)(b), Fla. Stat. (2020). In this case, the trial court concluded after the evidentiary hearing that no additional rent was due, as the Lease had been modified to remove such obligation, and dismissed the action, transferring any post proceeding motions to the pending small claims action filed by the Tenant. The Landlord asserts that the trial court erred in dismissing the action after the hearing and at most, the trial court should have held, on a preliminary basis, that the Tenant did not have to deposit additional rent into the court registry and should have allowed the case to proceed to a proper trial on whether to grant eviction. We agree.

Our decision in *Rowe v. Macaw Holdings I, LLC*, 248 So. 3d 1178 (Fla. 4th DCA 2018), is instructive. There, the lease described a credit to which the tenant was entitled for partial destruction of the premises as a reduction to "fixed rent." *Id.* at 1179. Where the parties disputed the amount of rent due after considering the credit, we held that the trial court erred by failing to hold an evidentiary hearing under section 83.232(2). *Id.* at 1180. We reasoned:

> This case fell under section 83.232(2)(b), which contemplates a hearing on "[w]hat properly constitutes rent" under a lease. The trial court was required to make at least *a preliminary determination* of the reduction, if any, to which the tenant was entitled regarding the deposit into the court registry required by section 83.232. *Like the findings in a temporary relief hearing in a chapter 61 case, a finding at a section 83.232 hearing can be modified after discovery and a final hearing on the merits.*

*Id.* (alteration in original) (emphasis added). As such, in *Rowe*, we compared a court's findings on a motion to determine rent to be paid into the court registry to findings on a motion for temporary relief in dissolution of marriage proceedings, noting that such are required to be made *preliminarily* and can be modified *after discovery and a final hearing* on the merits. *See id.*

6

In the instant case, although the issues raised at the evidentiary hearing on the motion to determine rent may have been the same issues to be resolved at an eviction trial, review of the record reflects that discovery had not yet occurred. Nor had the matter been set for a final hearing on the merits. Rather, the Tenant filed its motion to determine rent at the same time it filed its answer to the complaint. And while the Landlord was given notice of the hearing itself, the notice did not reflect that such hearing would be a final hearing or that dismissal of the action was at issue. As such, the trial court erred in *sua sponte* dismissing the action by denying the Landlord due process. Upon hearing the Tenant's motion to determine rent, the trial court was to make a preliminary determination as to the factual and legal issues concerning what, if any, additional rent was due to the court registry for the duration of the action and nothing more.

Payment of Additional Rent Under Duress

We agree with the Landlord's arguments that there was no competent substantial evidence to support the trial court's finding that additional rent was paid under duress.

"When evaluating whether competent, substantial evidence supports a trial court's ruling, '[l]egal sufficiency . . . as opposed to evidentiary weight, is the appropriate concern of an appellate tribunal.'" *Stone v. Stone*, 128 So. 3d 239, 240 (Fla. 4th DCA 2013) (alterations in original) (quoting *Brilhart v. Brilhart ex rel. S.L.B.*, 116 So. 3d 617, 619 (Fla. 2d DCA 2013)).

"To establish duress, two factors must be proven: (1) that the act was effected involuntarily and was not an exercise of free choice or will, and (2) that this condition of mind was caused by some improper and coercive conduct by the other side." *AMS Staff Leasing, Inc. v. Taylor*, 158 So. 3d 682, 687 (Fla. 4th DCA 2015). As the Landlord notes, however, "it is not improper and therefore not duress to threaten what one has a legal right to do." *City of Miami v. Kory*, 394 So. 2d 494, 498 (Fla. 3d DCA 1981).

> [A] threat to bring a civil action or to resort to remedies available under a contract is not such duress as will justify rescission of a transaction induced thereby. This is true even though it is subsequently determined that there is no legal right to enforce the claim, provided the threat is made in good faith, i.e., in the reasonable belief that a possible cause of action exists.

7

*Id.* (quoting 13 Williston on Contracts § 1606, at 672-73 (3d ed. Jaeger rev. 1970)).

In this regard, although the Tenant's representative testified he was under pressure and did not feel he had a choice when he made the payments of additional rent due to the Landlord's "harassment," the only harassment which the Tenant described was the Landlord threatening to take possession of the leased premises, presumably by initiating an eviction. Indeed, such was the nature of the "repeated threats" described in the Tenant's affirmative defense. However, the Landlord presented sufficient evidence of a good faith basis to believe the Lease was not properly modified. Thus, although the trial court found the Landlord was not entitled to additional rent due to an oral agreement amending the Lease, the Landlord's threats to evict the Tenant do not meet the legal requirements for "duress." Therefore, the record does not reflect competent substantial evidence to support the trial court's conclusion that the Tenant's payments of additional rent to the Landlord were made under duress.

Waiver of the Amendment of Lease

The Landlord also argues on appeal that the trial court failed to consider that the Tenant's conduct of paying the additional rent to the Landlord prior to the Landlord's eviction action constituted a waiver of the Tenant's prior oral agreement with the original landlord to remove additional rent from the Tenant's obligation. We disagree. Review of the trial court's order reflects that the trial court did not ignore the waiver argument, but instead the trial court alternatively concluded that these payments were made by the Tenant under duress. However, because we reverse the trial court's finding of duress, the trial court will be free to consider any evidence and argument the Landlord presents on remand regarding waiver.

Interpretation of the Lease

Finally, the Landlord contends the trial court misinterpreted the Lease by determining in part that the Tenant was not required to pay its share of the real estate taxes on the leased property because of an ambiguity in the language of the Lease.

"It is a fundamental rule of contract interpretation that a contract which is clear, complete, and unambiguous does not require judicial construction." *Imagine Ins. Co., v. State ex rel. Dep't of Fin. Servs.*, 999 So. 2d 693, 696 (Fla. 1st DCA 2008) (quoting *Jenkins v. Eckerd Corp.*, 913 So.

2d 43, 50 (Fla. 1st DCA 2005)). Accordingly, "[w]hen the language of a contract is clear and unambiguous, courts must give effect to the contract as written and cannot engage in interpretation or construction as the plain language is the best evidence of the parties' intent." *Talbott v. First Bank Fla., FSB*, 59 So. 3d 243, 245 (Fla. 4th DCA 2011). Regarding ambiguity,

> "[w]hether a document is ambiguous depends upon whether it is reasonably susceptible to more than one interpretation." *Detroit Diesel Corp. v. Atl. Mut. Ins. Co.*, 18 So. 3d 618, 620 (Fla. 4th DCA 2009) (quoting *Lambert v. Berkley S. Condo. Ass'n*, 680 So. 2d 588, 590 (Fla. 4th DCA 1996)). "However, a true ambiguity does not exist merely because a document can possibly be interpreted in more than one manner." *Id.* (quoting *Lambert*, 680 So. 2d at 590). "In construing the language of a contract, courts are to be mindful that 'the goal is to arrive at a reasonable interpretation of the text of the *entire agreement* to accomplish its stated meaning and purpose.'" *Murley v. Wiedamann*, 25 So. 3d 27, 29 (Fla. 2d DCA 2009) (emphasis added) (quoting *Taylor v. Taylor*, 1 So. 3d 348, 350 (Fla. 1st DCA 2009)).

*Sidiq v. Tower Hill Select Ins. Co.*, 276 So. 3d 822, 827 (Fla. 4th DCA 2019).

The relevant lease provisions at issue are paragraphs 3(c) and 3(d) of the Lease. Paragraph 3(c) is titled "Additional Rent" and provides in pertinent part:

> Tenant shall pay, as additional Rent ("Additional Rent"), prorated for the part of the Lease Term within the applicable calendar year, Tenant's Percentage Share ("Tenant's Percentage Share"), as hereafter defined, of the total amount of (i) the annual operating expenses ("Operating Expenses"), as hereafter defined *and (ii) the annual taxes* ("Taxes") for the Building.

(emphasis added). Paragraph 3(d) defines material terms of the Lease, and in defining the term "operating expenses," paragraph 3(d)(I) states: "Operating Expenses shall not include real property taxes." The term "Taxes" is also separately defined in paragraph 3(d)(III) to mean:

> [T]he gross amount of all . . . taxes . . . including all taxes whatsoever . . . attributable in any manner to the Building, the land on which the Building is located . . . or any charge or other amount required to be paid to any governmental

9

authority, whether or not any of the foregoing shall be designated 'real estate tax,' . . . or designated in any other manner.[1]

Thus, we agree with the Landlord that the Lease's plain language reflects that additional rent is defined as the tenant's percentage share of the (1) annual operating expenses *and* (2) the annual taxes. While real property taxes are excluded from the definition of operating expenses, they are included in the definition of "taxes" which is the second component of the additional rent defined by the Lease.

In its order, the trial court may have equated the term "additional rent" with "annual operating expenses," as the trial court does not appear to have analyzed the definition of the second component of the additional rent, which was "annual taxes."[2] Regardless, the Landlord is correct that

---

[1] The full paragraph defining taxes is the following:

> (III)    The term "Taxes" shall mean *the gross amount of all* impositions, *taxes,* assessments (special or otherwise), water and sewer assessments and other governmental liens or charges of any and every kind, nature and sort whatsoever, ordinary and extraordinary, foreseen and unforeseen, and substitutes therefor, *including all taxes whatsoever* (except for taxes for the following categories which shall be excluded from the definition of Taxes: any inheritance, estate, succession, transfer or gift taxes imposed upon Landlord or any income taxes specifically payable by Landlord as a separate tax-paying entity without regard to Landlord's income source as arising from or out of the Building and/or land on which it is located) *attributable in any manner to the Building, the land on which the Building is located* or the rents (however the term may be defined) receivable therefrom, or any part thereof, or any use thereon, or any facility located therein or used in conjunction therewith or any charge or *other amount required to be paid to any governmental authority, whether or not any of the foregoing shall be designated "real estate tax"*, "sales tax", "rental tax", "excise tax", "business tax", or designated in any other manner.

(emphasis added).

[2] Presumably, the trial court may have been led astray by the parties' use of the terms. For instance, in the Landlord's notice letter that preceded the eviction suit, the Landlord advised the Tenant that the Tenant was responsible for paying "operating expenses as additional rent," citing Paragraphs 3(c) and 3(d) of the Lease. Notably, the notice letter contained no mention of real property taxes. Further confusion may have been caused by the testimony of the Landlord's

the Lease's plain language does not reflect any ambiguity as to whether a proportionate share of the real estate taxes were intended as additional rent. Notably, without explaining its analysis, the trial court found ambiguity against the Landlord and then proceeded to make its threshold finding that the Lease was orally modified to remove the requirement to pay additional rent.[3] We conclude the trial court erred in finding the Lease ambiguous on the issue of a proportionate share of real estate taxes as additional rent.

*Conclusion*

We reverse the trial court's dismissal of the eviction action because it violated the Landlord's due process rights and because no competent substantial evidence supported the trial court's finding that the Tenant's payment of additional rent was made under duress. We further determine that the trial court erred in finding the Lease was ambiguous as to whether the additional rent provision required payment of a proportionate share of real estate taxes. On remand, the trial court shall make appropriate preliminary findings as to the amount of rent that the Tenant should pay into the court registry while the eviction action is pending. The trial court may entertain further evidence to resolve the motion to determine rent. As to the effect of the *preliminary nature* of the remand ruling on the motion, our opinion should be considered law of the case on the issue of duress; however, the trial court may make a preliminary determination as to the issue of oral modification of the Lease and waiver thereof. Our opinion also should be considered as law of the case in resolving the eviction action as to whether the Lease is ambiguous concerning the requirement of additional rent to cover real estate taxes.

*Reversed and remanded with instructions.*

FORST and KUNTZ, JJ., concur.

\* \* \*

director that the Landlord was only charging the Tenant taxes and insurance as additional rent and was not charging Tenant the operating expenses, even though the Lease entitled it to do so.

[3] The Landlord does not raise a specific challenge to the merits of the trial court's ultimate conclusion that the Lease language was modified by the oral agreement between the Tenant and the original landlord so that the Tenant would not have to pay any additional rent. Therefore, this issue is not before us.

*Not final until disposition of timely filed motion for rehearing.*